JOHN F. LONG vs. AARON HICKINGBOTTOM.

In every sale of a chattel, if possession be at the time in another, and there be no covenant of warranty of title, the rule of *caveat emptor* applies, and the party buys at his peril. But if the seller has possession of the article sold, and he sells as his own, and not as agent for another, and for a fair price, he is understood to warrant the title.

A fair price implies a warranty of title, and the purchaser may have satisfaction from the seller, if he sells the goods as his own, and the title proves deficient.

It may be inferred, in the absence of positive proof to the contrary, that the vendor of personal property had possession of it at the time sold, and that it was sold for a fair consideration; and the law will infer that the payment of

Long *v.* Hickingbottom.

the money and the delivery of possession to the vendee, were simultaneous acts.

*Quære?* If a *feme covert* can act by an agent in selling and transferring her title to her slaves, there is but one mode by which such agency can be created, and that is by deed signed and sealed by herself and husband, and acknowledged in the same manner that her conveyance must be acknowledged, in order to transfer her title to the purchaser.

Whether L. professed to sell the slave as his own property, in which case the law implies a warranty of title, and he is responsible in damages for a breach of his warranty; or if he professed to act as his wife's agent in making the sale, and obtained the money without a shadow of consideration, it may be recovered back as money had and received.

IN error from the circuit court of Franklin county; Hon. Stanhope Posey, judge.

Hickingbottom filed his complaint against Long to the March term, 1853, of that court. The complaint contains three counts.

The first count alleges, that on the 6th of December, 1848, Long offered to sell Hickingbottom a slave, named Jane, then in Long's possession, for $250. That Long, by falsely, &c., representing and warranting the title to said slave to be good, and representing that he would make and procure to be made to him a good title to said slave, induced him to buy said slave, which he did, and then and there paid to Long for said slave the sum of $250; avers that the title to said slave was not in Long, but in Long's wife; and that Long has neither made, nor procured to be made to him, a good title to said slave. By means whereof, and confiding in said representations, he was induced to keep said slave, and by his care, increase her value, and also to defend a suit brought against him by Long and wife, in said court, to recover said slave, in which said suit judgment was, at the September term, 1852, of said court, recovered by Long and wife for said slave or $600, her alternate value, and costs amounting to $63. That by the aforesaid representations of Long, and by his joining with his wife to bring about a breach of his warranty, express and implied, he, Hickingbottom, was necessarily forced to expend, in defending said suit, and in the damages in which he was mulcted at the suit of Long and wife, &c., $713; whereby an

65 *

action hath accrued to him to demand of Long $250, for the money fraudulently received from him by Long, without consideration; also $50, attorney's fee; $63, costs of said suit; and $350, the increased value of said slave, owing to the care, &c., bestowed upon her, &c.

The second count alleges, that on the 1st of December, 1848, the plaintiff, at the special instance and request of defendant, had bargained with defendant to purchase from him a certain other slave named Jane, (then in defendant's possession,) and a good title to said slave, for $250. And in consideration of said $250 then and there paid by plaintiff to defendant, he, defendant, promised plaintiff to deliver to him the said slave, and to make and procure to be made to him, a good title to said slave within a reasonable time. Yet that the said defendant, not regarding, &c., but contriving, &c., hath not, although a reasonable time has long since elapsed, made, or caused to be made to plaintiff, a good title to said slave, but has united with his wife in a suit for the recovery of said slave, and by reason of the want of good title agreed by him to be made as aforesaid, they have recovered judgment at September term, 1852, of said court, against plaintiff, for said slave; which judgment and all costs plaintiff has been compelled to pay and satisfy; by means whereof, plaintiff has been deprived of all the advantages that would have resulted from his purchase, had he received a good title, but has been put to great expense, &c., namely, $713.

The third count alleges, that on the 20th of September, 1852, the defendant was indebted to the plaintiff in the further sum of $363, for money by said defendant before that time had and received, to and from said plaintiff and for his use, upon the rescinding and vacating a contract before that time made by defendant with plaintiff, for the sale of a slave named Jane, to which defendant agreed to make or cause to be made to plaintiff, a good title, and afterwards, namely, on the 20th September, 1852, defendant wholly failed to make, or cause to be made, such title, but in connection with his wife, by the judgment of a court of competent jurisdiction, recovered said slave from the plaintiff, which judgment was by said plaintiff fully satisfied; whereby said contract for the sale and conveyance of said

negro, was by said defendant rescinded and disaffirmed. In consideration whereof, the said defendant promised the plaintiff to pay him $250, the sum paid by him for the purchase of the slave, as well as $50 attorney's fee, and $63 the costs of suit, being, in the aggregate, the money had and received by defendant for plaintiff's use as aforesaid, whenever he should be requested, &c. Yet the defendant has not paid, and refuses to pay, &c.

To this complaint, the defendant pleaded : —

1. A general denial of all plaintiff's allegations.

2. That he did not promise within three years, &c.

3. That the causes of action did not accrue to the plaintiff within three years, &c.

At September term, 1853, the case was tried; a verdict rendered in favor of the plaintiff for $363, and a new trial granted by the court.

The plaintiff then, by leave of the court, amended his complaint by adding another count.

The fourth count alleges that on December 6, 1848, the defendant, contriving, &c.; represented to plaintiff that he was empowered to sell and convey a negro slave named Jane, and to make and transfer a good title to her; and defendant, then and there, although he knew such representations to be false, fraudulently pretended to make and transfer such title; by means of which representations the plaintiff, not knowing any better, but believing that defendant was so empowered, was induced to purchase and pay for said slave, and did then and there buy said slave from defendant and pay him $250 for her, and for the fraudulent and void title then made and transferred by defendant to him, he the said plaintiff at the time believing said title to be good, as defendant represented, whereas, in fact, at that time, defendant had no authority or power to make or transfer any title to said slave, which he, the said defendant, well knew; and the plaintiff avers that the said false and fraudulent representations of defendant induced him to employ a lawyer, at an expense of $50, to defend the title acquired as aforesaid, and to pay $63 costs of suit in defending such title,

and the additional sum of $650 for the value and damages for the recovery of said slave in a certain suit instituted by defendant and wife in said court for the recovery of said slave, by reason of the fraudulent and void sale and representations as aforesaid, in which suit said defendant and his wife recovered judgment against plaintiff for $650 and costs; all of which judgment plaintiff was compelled to pay, in consequence of the fraudulent representations, &c., of defendant as aforesaid; wherefore he has sustained damages to the sum of $713, &c., &c.

To the fourth count, the defendant filed a general denial.

At March term, 1854, the case was again tried, and a verdict rendered in favor of plaintiff for $774.44. The following was plaintiff's evidence upon the trial.

Samuel Hickingbottom, a witness for plaintiff, testified, that in 1848 or 1849 he was at plaintiff's house, and plaintiff requested him to tell him how many sovereigns it took to make $250, as he had bought negro Jane from Long for that amount, and that Long was then present; that Long, on the payment of the $250, delivered to plaintiff a bill of sale of Jane, signed by his wife, which was accepted by plaintiff.

The plaintiff then read in evidence the record of the judgment recovered against him by Long and wife for said slave, or $600, her alternate value, and the execution issued thereon, with the sheriff's return, showing the damages and costs collected of plaintiff, said return being "received and satisfied in full November 5, 1852."

It was admitted that the bill of sale which Long gave to Hickingbottom was not signed by Long, and was not acknowledged by Mrs. Long, according to law; and that said slave was the property of Long's wife at the time he delivered her to plaintiff.

John P. Stewart, a witness for defendant, testified that he had seen the bill of sale of Jane in plaintiff's possession; that it was signed by Long's wife and attested by Long.

The following instructions were then given by the court, on behalf of the plaintiff.

Long *v.* Hickingbottom.

1. That when a man sells another personal property, there is an implied warranty of title in him who sells, and the seller is responsible to the buyer for a breach of warranty.

2. Where there is a warranty, expressed or implied, in the sale of personal property, there must be a recovery by the real owner before an action can be maintained on the breach of warranty for the recovery of the purchase-money.

3. If they believe from the evidence, that three years have (q. not) elapsed from the time of the recovery of Long and wife, until the commencement of this suit, then the statute of limitations does not bar a recovery on the first and second counts in the complaint.

4. That suit could not legally have been brought by plaintiff for breach of warranty until recovery of judgment by Long and wife for said slave Jane.

5. That if the jury believe from the evidence, that defendant fraudulently sold Jane to plaintiff, and that plaintiff has been damaged by such fraud, they may find for the plaintiff to the extent of the damage proved.

6. That if defendant sold slave Jane, acting as agent, without any authority therefor, or his principal is not responsible, then an action will lie against him, to the extent of the damages sustained, as a consequence of such want of authority.

The following instructions were then given by the court, on behalf of the defendant.

1. The statute of limitations commences running from the time suit may be instituted.

2. If they believe from the evidence, that the money was paid to Long in the year 1848, on a contract void at law, Hickingbottom might have instituted suit immediately, and recovered the money. (This instruction given, as applicable to third count of complaint.)

3. If they believe from the evidence, that defendant did not sell Jane to plaintiff, nor warrant the title to her, they may find for defendant.

4. That the law will not presume fraud. It must be proved.

5. If they believe from the evidence, that defendant was not

guilty of fraud at the time he delivered the slave to plaintiff, by which plaintiff was deceived, they may find for the defendant on the fourth count.

*John B. Coleman,* for appellant.

The defendant in error, who was plaintiff in the court below, filed his complaint against the plaintiff in error, who was defendant in the court below, to recover damages for an alleged breach of warranty of title to a negro slave.   The complaint contains four counts, the substance of which is as follows:—

First count.   That defendant being in possession of a slave named Jane, offered to sell her to plaintiff for $250, and by falsely warranting the title, and representing that he would procure a good title to be made, induced plaintiff to purchase her for $250; then avers that the title to the slave was in defendant's wife, and not in defendant, and that defendant and wife subsequently brought suit against him and recovered said slave.

Second count.   That plaintiff, at defendant's request, bargained to purchase from defendant, for $250, slave Jane, then in defendant's possession, and in consideration of $250, then paid him by plaintiff, agreed to deliver said slave to plaintiff, and to make him a good title to her within a reasonable time; then avers a failure to make the title, and the suit and recovery by defendant and wife.

Third count.   For money had and received by defendant, for plaintiff's use, upon the rescission of a contract of sale of slave Jane, to whom defendant agreed to make plaintiff a good title, but wholly failed to do so, and with his wife subsequently recovered said slave from plaintiff, and thereby rescinded and disaffirmed said contract.

Fourth count.   That defendant fraudulently represented to plaintiff that he was empowered to sell slave Jane, and to make and transfer a good title to her, and fraudulently pretended to make and transfer such title; in consequence of which, plaintiff was induced to purchase and pay for said slave $250, and did then and there purchase said slave of defendant and pay him

$250 for her; avers that defendant had no authority to sell said slave, as he well knew, and that said slave was subsequently recovered by defendant and wife.

The first three counts are based on the assumption, that the defendant, in his own right and as principal, made the sale of the slave and warranted the title.

Proof of this allegation, we admit, would entitle the plaintiff to a recovery. We admit, also, that if the defendant, representing himself to be the owner of the slave, or without making any direct representation, but concealing the fact that he was not the owner, and being at the same time in possession of the slave, had sold her to the plaintiff, the law would imply a warranty of title.

When the seller has possession of the property, and affirms it to be his, the law implies a warranty of title. 1 Salk. 210; 1 Ld. Raym. 593; Comyn on Cont. 116; 1 Johns. 274; 20 Ib. 196; 2 Dall. 91.

This will be found to be the extent to which an implied warranty of title is carried. The seller must be in possession, and must in some way represent himself to be the owner, or conceal the fact that he is not the owner.

Now let us examine upon what testimony the verdict in the court below was rendered.

Samuel Hickingbottom was at plaintiff's house when plaintiff asked him, in defendant's presence, how many sovereigns it took to make $250, as he had bought slave Jane from defendant for that sum. That defendant, on the payment of said $250, delivered to plaintiff a bill of sale of the slave signed by defendant's wife, which was accepted by the plaintiff.

It was admitted that the bill of sale was not signed by defendant, and that the slave was the property of defendant's wife. It was proven, besides, that the bill of sale had subsequently been seen in plaintiff's possession. The record of the recovery by defendant and wife against plaintiff, was also given in evidence. This was all the testimony before the jury.

In the first place, there is no evidence that at the time of the sale the slave Jane was in defendant's possession. The witness testifies to the payment by plaintiff to defendant, and to the

delivery by defendant to plaintiff of the bill of sale; but not a word is said as to the delivery or whereabouts of the slave. She may have been, and in all probability she was, at that time, in the possession of Mrs. Long. But be this as it may, to fasten an implied warranty on the defendant, it was incumbent on the plaintiff to prove that the negro was in defendant's possession at the time of the sale. This he has neither done nor attempted to do. The legal presumption, therefore, is, that she was not, at the time, in defendant's possession.

" If the seller be out of possession, there must be an express warranty to support the action." Comyn on Cont. 116.

" Where one having possession of personal property, sells it, the bare affirming it to be his, amounts to a warranty; *aliter*, where the seller is out of possession, for there may be room to question the seller's title, and *caveat emptor*, in such case, to have either an express warranty or a good title." *Medina* v. *Stoughton*, 1 Salk. R. 210.

Proof, then, by the plaintiff,that the defendant was in possession of the slave at the time of the sale was essential to entitle him to a recovery upon either of the first three counts, even had he established an unqualified assertion of ownership by the defendant. This proof of defendant's possession the plaintiff has failed entirely to make, and there is nothing in the case from which it could be legitimately inferred.

In the second place, there is not only no proof that defendant affirmed or represented the slave to be his, but there is positive evidence that he apprised the plaintiff that the slave did not belong to him, but was the property of his wife, for whom he was, therefore, only acting as agent. He is shown to have disclosed his principal.

The testimony is, that upon the payment of the $250, the defendant delivered to the plaintiff the bill of sale, which was signed by Mrs. Long alone, and that the plaintiff accepted it; which bill of sale was subsequently seen by Stewart in the plaintiff's possession.

Is not the acceptance by the plaintiff, of the bill of sale from Mrs. Long, conclusive that he had been apprised and knew that the slave was the property of Mrs. Long and not of the

defendant? If defendant had represented the slave to be his, or without any positive representation to that effect had concealed the fact of Mrs. Long's ownership, would not the plaintiff, on receiving the bill of sale, at once have expressed some surprise, made some inquiry, or said something indicating his previous ignorance of the fact? Nothing of the kind does he do; defendant hands him the bill of sale, and he accepts it without a word. Can we for a moment suppose, that if he had believed defendant to have been the owner of the slave, he would have been content with a bill of sale signed only by his wife? What, we ask, is the irresistible, indeed the only inference to be drawn from these facts? That defendant had made a full and true disclosure to the plaintiff, of the title to the slave; that he had stated that she belonged to Mrs. Long; that Mrs. Long wanted to sell her, and that he had Mrs. Long's bill of sale ready to deliver. The idea that the defendant could have represented himself as the owner, is thus conclusively disproved. The plaintiff must have known, and did know, that the negro did not belong to defendant; that defendant was but an agent in the transaction; and that he was purchasing from Mrs. Long, and not from defendant. We have no doubt that both the plaintiff and the defendant believed at the time, that the bill of sale from Mrs. Long conveyed a good title to the slave. In this they were mistaken, and the mistake being one purely of law, unmixed with any misapprehension of the facts, the plaintiff is without redress; and this, by the way, shows the importance of consulting and feeing a lawyer on all such occasions. An expenditure of ten dollars in the way suggested, would have prevented all this litigation between Mr. Long and his respectable antagonist, who, if his name be not Long, certainly has a long name.

It may, and probably will be argued, that the statement made by plaintiff in defendant's presence, " that he had bought negro Jane from defendant," is proof that defendant represented himself to be the owner.

It is very evident that this remark of the plaintiff, if correctly recollected by the witness, was a careless and casual one. It was not made with a view to the statement of the title he was

about to get to the slave, but was explanatory of his object in asking the question of the witness, how many sovereigns it took to make $250. But apart from the connection in which it was used, it was a remark that might naturally be made by the plaintiff, with full knowledge that the defendant was a mere agent in the matter. What more common than for a man who has just purchased a horse from A. as the agent of B., to say that he had bought him from A., without saying any thing about his agency ? A. being present, and not dissenting from the statement, would hardly, we think, furnish grounds, without further proof, for holding him liable upon an implied warranty of the horse, especially if he had given a bill of sale in the name of his principal.

We think, however, that the acceptance by the plaintiff of the bill of sale from Mrs. Long, without objection or comment, is a conclusive answer to any argument that can be made upon the foregoing remark of the plaintiff, and shows that the plaintiff had full knowledge that the slave did not belong to defendant.

We submit, then, that the first three counts of the complaint are wholly unsustained by the evidence. They go upon the ground that defendant made the sale, representing himself to be the owner of the slave ; that he sold her as principal and not as agent. The testimony shows that he acted only as agent, and fully disclosed the title to the slave.

The fourth count, which was filed after there had been one trial of the case in the court below, abandons the ground taken in the first three, and seeks to fix a liability upon the defendant, by the allegation that he represented that he was empowered to sell the slave Jane, and to make and transfer a good title to her, and that he fraudulently pretended to make and transfer such title.

The proof does not sustain this count, and it will not be seriously contended that Long made the representations therein charged upon him.

*H.* and *W. S. Cassedy*, for appellee.

The only question that can arise in this case is, Was the war-

ranty broken? The bill of exceptions shows that Long himself, in conjunction with his wife, set up title to the slave, and in an action at law recovered the sum of six hundred dollars, the value of the slave, and the costs of suit. This was the damage Hickingbottom sustained by the breach of warranty. The judgment was properly admitted as evidence to show failure of title, and that Long had notice of the suit in which the title warranted by him was tested and determined bad. 1 Johns. R. 518; 4 Dall. R. 436. The judgment in the case of *Long and Wife* v. *Hickingbottom*, was the only evidence of breach of contract, as it was in the nature of an eviction by analogy to covenants real. 24 Wend. R. 103.

But it will doubtless be contended, that Long sold as agent of his wife, and is not responsible on his implied warranty. This position is not sound. If he was agent and relied on that, the authority of his principal should have been shown. In the sale of separate property of married women it takes husband and wife jointly to constitute a principal. If agent of his wife alone, he had no responsible principal. Or even if the wife could alone appoint an agent for the sale of her separate estate, no such authority was given or shown in this instance, as is manifest from the fact that the wife, by instituting suit for the recovery of property sold by her husband, disavowed the act of the husband and repudiated any authority in him to sell. Her recovery against Hickingbottom is proof that the husband had no authority to sell, and if not, he was responsible. An agent with no authority, or one who exceeds his authority, or one who has no responsible principal, is personally responsible. 2 Kent, Comm. 629; Story on Agency, § 264, and note 3; Ib. § 262, and note 1; Ib. § 270; 3 Johns. Cas. 70; 8 Wend. R. 494; 16 Mass. R. 461; 12 S. & M. R. 398.

In the last case the court held, that the bond, though executed as agent, was his own bond, and an action can be maintained on it as if executed by him personally. Ib. 410; 2 Kent, 631; 2 Wheat. R. 56.

Then, though the sale was made by Long as agent without power, all the legal consequences arise therefrom as if made

by him personally, and an action can be maintained thereon. Story on Agency, § 270.

But in addition to these grounds of sustaining the verdict and judgment, there is yet a third ground, by which alone this action can be sustained: the ground of fraud with damage. The last count was framed to meet this remedy. That such actions are allowable, 3 Term R., by Durnford & East, 27; 2 Wend. R. 388.

Long knew whether he was authorized to sell or not. He, with this knowledge, offered to sell to Hickingbottom and did sell. The very fact of offering to sell, was a representation of his authority, and the pretended bill of sale was an ingenious device to impress Hickingbottom with the opinion that his (Long's) wife had relinquished all title, when the fact was otherwise. Here was a deceit practised on Hickingbottom, by inducing him to believe what was false. For there was no attempt even to prove that Long's wife had ever seen this spurious bill of sale; no proof she had ever signed it; and a total disavowal on her part of any connection with or authority for it whatever; and a confirmation of the truth of this by Long, in joining her in the suit for the recovery of the slave Jane. These facts were all known to Long, and consequently, he knowingly, with intention to deceive Hickingbottom, fraudulently sold the slave Jane, all his acts representing falsely an authority so to act.

This fraud, by itself, would constitute no cause of action. There must be damage to Hickingbottom therefrom. And this has been abundantly shown by the record of recovery by Long and wife against Hickingbottom. A damage not simply flowing from Long's fraudulent sale, but directly produced by Long. For, though selling without authority, he could yet have saved himself from this charge of fraud, and Hickingbottom from damage, by making good the injury to his wife, and thus have prevented the suit for the assertion of her title to the slave. But instead of taking this more commendable course, he becomes an active party in consummating his perfidy, by joining in the suit which was to add damage to his fraud.

And can it be said that this scheme of villany is successfully carried out by the law, and yet the law afford no remedy, and this daring violator of its principles go unwhipped of justice? If this is so, then the thief and robber add to the ignominy of crime the contempt for folly, if not somewhat of that sympathy due to simpletons. For, with the example of Long before their eyes, (if he succeeds,) the courts can tell them, that "he who cheats makes more, and risks less, than he who steals." And this class will not require much amplitude of reasoning, nor much research in the storehouse of the past, to justify their natural inclination. One precedent will open to them a fruitful field for the exercise of this talent for private conquest. They will enlarge the area of stealing, in a manner never imagined by its most ardent votaries.

I have no apprehension, however, on this score. The pleasing delusion, excited by this little experiment of Long's, will not be long indulged in, but the court will (as did the court below) disturb it rather rudely, as Long will think, by affirming the judgment of the circuit court.

As to the damages, as found by the jury, I do not think them at all excessive. They were simply what Hickingbottom was compelled to pay in consequence of Long's fraud and false warranty, with legal interest added thereon. As Long, by his implied warranty, contracted to indemnify Hickingbottom's loss on failure of title, the extent of that loss was the measure of Hickingbottom's right to damages. The extent of that loss can be ascertained by the execution paid by Hickingbottom, which had emanated from the judgment recovered by Long and wife, in establishing the want of title in Hickingbottom. The title, too, warranted by Long. On the other hand, if this question is tested by the last count in the complaint, the finding of the jury is equally sustained.

The measure of Hickingbottom's right of recovery, is the damages suffered by him in consequence of Long's fraud. In consequence of that fraud, he was compelled to pay the increased value of a slave fraudulently sold by Long, with the costs of judicially testing his want of title. This was what

66*

the jury found. with interest thereon, as is apparent from the proof in the bill of exceptions, and the finding of the jury.

The court below required a *remittitur*, but if the court concurs in the above view of the damages to which Hickingbottom was entitled, then this *remittitur* was wrongfully required by the court, and it would be competent for this court to render justice according to the record, by reversing the judgment of the court below, and rendering such judgment as the court should have rendered, namely, for the amount of verdict of the jury.

If the court, however, should deem any judgment of this kind beyond its power, it will therefrom perceive, that the judgment, as rendered, is certainly not extravagant, but below what the facts show him entitled to. The court below, in requiring a *remittitur*, evidently was of the opinion, that Hickingbottom was only entitled to the price paid to Long, with interest thereon at the highest rate, and the costs paid on the suit by Long and wife, and the expenses of defending that suit. This, certainly, is the lowest measure of justice that could be meted out to Hickingbottom. And the court below, if it erred at all, erred in this direction.

A point may possibly be urged on the statute of limitations. But it is evident that this statute is wholly inapplicable to any count in the complaint, unless, perhaps, to the count for money had and received. Long's warranty was not broken until Hickingbottom's title was proved defective. This could only be accomplished by a recovery under the paramount title by analogy to eviction in covenants real. 24 Wend. R. 103.

Until such recovery, Hickingbottom had no cause of action. This recovery took place in September, A. D. 1852. This suit was commenced in A. D. 1853, consequently three years did not elapse from the time when Hickingbottom's right to sue accrued, until suit was commenced. Therefore the statute is not applicable to any count for breach of warranty; nor is it applicable to the counts for fraudulent sale; because no cause of action accrues for fraud simply, but it is required that damage must be conjoined to the fraud, before the right to sue accrues. This damage only was so united as a consequence of the fraud at the time of the recovery of Long and wife against

Hickingbottom, namely, September, A. D. 1852.   Then Hicking-bottom's right of action accrued, and suit was brought in A. D. 1853, consequently within three years from the ac-cruing of his right of action.   Therefore the statute is not ap-plicable to this count.   Nor is it plead to the last count, but simply a general denial, as the record shows.   Having examined all the points that can possibly arise in the case, no cause is perceived for a new trial, neither law nor justice requiring it.

Mr. Justice FISHER delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Franklin county.

The error assigned is, that the court below erred in overrul-ing the defendant's motion for a new trial, which was sought to be supported on the ground that the damages were excessive, and the verdict in other respects contrary to law and evidence.

The action was brought to recover damages for an alleged breach of warranty as to the title of the defendant to a slave, which he had sold to the plaintiff.

The material evidence introduced on the trial to support the action, may be stated in few words.   One witness states that he was present when the plaintiff paid to the defendant the sum of $250, which was understood by both parties to be in full payment for a slave named Jane, which had been sold by the defendant to the plaintiff.   That defendant on receiving the money, delivered a bill of sale, executed by his wife alone, and not acknowledged as required by the statute, to the plaintiff.

This is, in substance, the testimony, so far as it relates to the sale ; and the question is, as nothing appears showing that an express warranty was entered into by the defendant, whether the law will, under the facts, imply a warranty as to the title of the defendant to the slave sold to the plaintiff.

The rule is thus stated by Chancellor Kent : — " In every sale of a chattel, if the possession be at the time in another, and there be no covenant of warranty of title, the rule of *caveat emptor* applies, and the party buys at his peril.   But if the seller has possession of the article sold, and he sells as his own,

and not as agent for another, and for a fair price, he is understood to warrant the title." "A fair price implies a warranty of title, and the purchaser may have a satisfaction from the seller, if he sells the goods as his own, and the title proves deficient." 2 Kent, Com. 608, 609. The jury having found a verdict for the plaintiff below, the question is, when tested by the above rule, Can it be sustained? While there is no direct testimony that the seller at the time of the consummation of the sale, had the slave in his possession, or professed to sell her as his own property, or that she was even sold for a fair price, yet all these facts might have been legitimately inferred by the jury from the evidence introduced on the trial. One witness proves " that he was at the plaintiff's house, in the year 1848 or 1849, when he was asked by the plaintiff how many sovereigns it took to make $250, as he had purchased the slave Jane from defendant Long, for that amount," and that the defendant was present when this conversation occurred. The witness further states that the money was then paid to Long. This amounts to direct evidence that Long sold the slave to the plaintiff for the sum named, and the jury could have inferred that it was a fair price, especially as it is but a legal presumption that all sales are fairly made until the contrary is shown. They might also have inferred that the defendant had possession of the slave, as the law would presume that payment and delivery of possession to the purchaser were simultaneous acts, and if the possession was not in the defendant, of course he could not comply with this part of his contract in delivering possession to the plaintiff. That possession was thus delivered, is proved by the fact of the defendant and wife afterwards instituting a suit to recover the slave from the plaintiff.

It is, however, said, that the case is taken out of the operation of the rule, with respect to an implied warranty of title, by the fact of the seller delivering the bill of sale of his wife to the purchaser, and thus disclosing his agency, or rather the name of his principal. If a *feme covert* can act by an agent at all in selling or transferring her title to her slaves, there is still but one mode by which such agency can be created; and that is by deed,

Long *v.* Hickingbottom.

signed and sealed by herself and husband, and acknowledged in the same manner that her conveyance must be acknowledged, in order to transfer her title to the purchaser. An agency not created in the mode required by law, would be simply a nullity, and would not, therefore, in a legal sense, be an agency, and the party thus assuming to act could be held responsible by the alleged principal as having done an act prejudicial to her rights, without legal authority. Admitting, then, that the seller professed to act as the agent of the wife in making the sale, it would nevertheless be treated as a false assertion on his part, unless he were legally constituted such agent, and could bind his principal in making a sale of said slave. That he was not so authorized, even if it were in the power of the wife to have appointed an agent to sell her slaves, is manifest from the fact of his joining with her in prosecuting a suit to recover the slave sold to the plaintiff, and actually succeeding therein on the ground that the husband's act was void.

It is, therefore, wholly immaterial which position shall prevail. If he professed to sell his own property, then the law implies a warranty of title, and he is responsible in damages for a breach of this warranty. If, on the contrary, he professed to act as his wife's agent in making the sale, he merely assumed a false character, and thereby obtained the purchaser's money, without a shadow of consideration; and the money may, therefore, be recovered back under the count for money had and received.

Upon the whole case, it may be remarked, that if strict justice has not been administered in the court below, the plaintiff in the action, and not the defendant, has been the sufferer. The verdict, as modified by the court, is as reasonable as the defendant ought to have desired, and more so than justice demanded.

Judgment affirmed.